### UNITED STATES of America, Plaintiff,

v.

### John Richard MAYHEW, Jr., Defendant.

### No. 2:03–CR–165.

United States District Court, S.D. Ohio, Eastern Division.

Aug. 1, 2005.

---

David DeVillers, United States Attorney, Salvador A. Dominguez, U.S. Attorney's Office, Columbus, OH, for Plaintiff.

Frederick Douglas Benton, Steven Ray Keller, Steven Scott Nolder, Federal Public Defender, Columbus, OH, Isiah Gant, Nashville, TN, for Defendant.

*OPINION AND ORDER REGARDING MOTIONS TO DISMISS PORTIONS OF THE NOTICE OF INTENT AND MOTION TO DECLARE § 1201 UNCONSTITUTIONAL*

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on (1) Defendant's Motion to Dismiss Notice of Aggravating Factors and Declare the Federal Death Penalty Act of 1994 Unconstitutional in Light of the Supreme Court's Opinion in *Ring v. Arizona* [Docket No. 94]; (2) Defendant's Motion to Strike the Statutory and Nonstatutory Aggravating Factors from the Government's Notice of Intent to Seek a Sentence of Death [Docket No. 95]; (3) Defendant's Motion to Dismiss Nonstatutory Aggravating Factors (C)(1)(a)(b) & (c) Alleged in the Government's Notice of Intent to Seek the Death Penalty for Counts One & Seven [Docket Nos. 130 and 134]; (4) Defendant's Motion to Dismiss First Statutory Aggravator Alleged in Count One [Doc. No. 131]; (5) Defendant's Motion to Declare § 1201(a) Unconstitutional [Docket No. 105]; and (6) Government's Motion to Amend the Indictment and Notice of Intent to Seek the Death Penalty [No. 159].

## II. FACTS AND BACKGROUND

The essential background facts, as alleged by the government, are as follows. On the night of August 7, 2003, Defendant went to a home at 2258 Springmont Avenue, Columbus, Ohio, where he shot and killed his ex-girlfriend, Tamara McKibben, and her fiancé, Frank Rigsby. While at the residence, he threatened Tamara McKibben's son, Andy Aspell, Jr., with his gun. Defendant then kidnaped his and Tamara McKibben's daughter, Kristina McKibben, from the home. Defendant took Kristina McKibben with him in his car and drove with her to West Virginia. On August 9, 2003, Defendant, still with Kristina McKibben in the car, was pulled over by a West Virginia state trooper for a minor traffic offense. When the officer approached the car, Defendant drew a gun and shot the officer. A 30–minute car chase ensued. Defendant ultimately was stopped by a roadblock and tire spikes. While police were ordering him to exit the car, Defendant shot Kristina McKibben

twice, then shot himself once. Police pulled both people from the car, and Kristina McKibben told the police that she was from Columbus and that there was a bomb in the car. Two bombs were found under the front seats of the vehicle. Kristina McKibben died en route to the hospital. Shortly after his arrest, Mayhew was interviewed by Lieutenant David Livingston of the Greenbrier County Sheriff's Department. Mayhew admitted to having shot Tamara McKibben, Frank Rigsby, the West Virginia state trooper, and Kristina McKibben. He stated that he committed all of these shootings with the Tech–9 weapon recovered at the scene of his arrest. He informed Livingston that there were additional firearms—namely a 12–gauge shotgun and a .22 Magnum Marlin bolt-action rifle—at his home at 28 North Princeton Avenue in Columbus. On October 2, 2003, the government issued a seven count Indictment.[1]

## III. ANALYSIS OF FDPA AND NOTICE OF INTENT

### A. Overview of FDPA's Sentencing Phase

The Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591–3598, established procedures for imposing the death penalty for over sixty offenses. As an initial matter, the government must serve a defendant with a pretrial notice of the government's intent to seek the death penalty, a document which lists both the statutory and nonstatutory aggravating factors the prosecution intends to prove. 18 U.S.C. § 3593(a). In this case, the government filed this Notice of Intent ("NOI") on October 5, 2004.

Under the FDPA, the death sentence can only be imposed if the jury first determines that the defendant is guilty of the

1. On July 25, 2005, the government moved this Court to amend the Indictment slightly, striking the words "and did knowingly carry an unregistered destructive device" from Count Seven. The Court hereby **GRANTS** that Motion for the reasons set forth therein. The Indictment, in full, now reads as follows:

(1) that he "did willfully and unlawfully kidnap, abduct and carry away [Kristina] McKibben and willfully transport [Kristina] McKibben in interstate commerce from the Southern District of Ohio to the state of West Virginia, and did hold her for ransom, reward or otherwise, resulting in the death of [Kristina] McKibben";

(2) that, having been convicted of a felony in 1992, for the offense of kidnaping with gun specification, he "knowingly possessed a firearm, that is, an Intratec, Model Tec 9.9mm pistol, the said firearm having been shipped and transported in interstate commerce";

(3) that he "did knowingly transport or receive, in interstate commerce, an improvised explosive device with the knowledge or intent that it would be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy a vehicle, or other real or personal property";

(4) that he "did knowingly possess a firearm, that is, an improvised explosive device, not registered to him in the National Firearms Registration and transfer record as required in 26 U.S.C. § 5841";

(5) that he "did knowingly possess an unregistered firearm, that is, an improvised explosive device, not identified by a serial number, as required in 26 U.S.C. § 5842";

(6) that he "did knowingly travel in interstate commerce, with the intent to injure, harass and intimidate ... [Kristina] McKibben ..., and in the course of and as a result of such travel ... placed [Kristina] McKibben in reasonable fear of death and serious bodily injury, and such acts resulted in the death of [Kristina] McKibben"; and

(7) that he "did knowingly use, carry, brandish and discharge a firearm, that is, a pistol, all during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States [for] interstate stalking in violation of 18 U.S.C. § 2261A(1), and in so doing, [he] committed murder ... with malice aforethought, such murder being willful, deliberate, malicious and premeditated."

underlying death-eligible crimes.[2] If the defendant is found guilty, the sentencing phase begins, and the jury must find unanimously and beyond a reasonable doubt that the defendant had the requisite mental state when he committed the offense.[3] 18 U.S.C. § 3591(a)(2)(A)-(D). Third, the jury must find, unanimously and beyond a reasonable doubt, that at least one statutory aggravating factor exists.[4] Only if the jury finds both the requisite mental state and the existence of one statutory aggravating factor does the defendant become death eligible. Fourth, the jury considers that aggravating factor, plus any additional statutory aggravating factors *and* nonstatutory aggravating factors that the government has set forth, and weighs them against any mitigating factors the jury has found to be present.[5] 18 U.S.C. § 3593(e) ("[T]he jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."). Under 18 U.S.C. § 3591, the jury may recommend death, life imprisonment, or a lesser sentence, if it does so by a unanimous vote. If the jury is deadlocked, the court must sentence the defendant. Finally, although § 3593(e) uses the word "recommend" in describing the jury's decision to impose a death sentence, § 3594 indicates that the court "shall" sentence in accordance with the jury's verdict. *Id.*

## B. Facial Challenges to FDPA

Defendant makes two broad constitutional attacks against the FDPA.[6] First, Defendant argues that because recent federal death penalty jurisprudence has mandated that the mens rea requirement and

**2.** In the case sub judice, the death-eligible crimes are listed in Counts One and Seven. *See supra*, note 1.

**3.** The jury must find, beyond a reasonable doubt, that the defendant:
(a) intentionally killed the victim;
(b) intentionally inflicted serious bodily injury that resulted in the death of the victim;
(c) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
(d) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act....
18 U.S.C. § 3591(a)(2)(A)-(D).

**4.** In this case, the government's Notice of Intent to Seek the Death Penalty ("NOI") lists the following statutory aggravating factors:
Count One:

i. Death during commission of a crime; 3592(c)(1).
ii. Previous Conviction of Violent Felony Involving Firearm; 3592(c)(2).
iii. Grave Risk of Death to Additional Persons; 3592(c)(5).
iv. Substantial Planning and Premeditation; 3592(c)(9).
v. Multiple Killings or Attempted Killings; 3592(c)(16).
Count Seven:
a. Grave Risk of Death to Additional Persons; 3592(c)(5).
b. Substantial Planning and Premeditation; 3592(c)(9).
c. Multiple Killings or Attempted Killings; 3592(c)(16).

**5.** While all statutory *and* nonstatutory aggravating factors need to be found beyond a reasonable doubt, only one juror needs to find the existence of a mitigating factor by a preponderance of the evidence.

**6.** Although Defendant is being prosecuted under the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3598, Defendant's Motion to Declare the FDPA Unconstitutional exclusively references 21 U.S.C. § 848.

at least one aggravating factor be charged to the grand jury, and because the FDPA does not provide as such, the FDPA is unconstitutional. In *Ring v. Arizona*, 536 U.S. 584, 588, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Supreme Court held that the Sixth Amendment required that the aggravating circumstances necessary for imposition of the death penalty be found by the jury beyond a reasonable doubt, reasoning that under the Sixth Amendment, all factors increasing the penalty for a crime beyond the statutory maximum must be found by a petit jury. *Id. Ring*, however, did not require that the aggravating factors be charged to a grand jury, pursuant to the Fifth Amendment, because *Ring* was a state death penalty case, and the Fifth Amendment's grand jury requirement has not been applied to the states. *Id.* at 597 n. 4, 122 S.Ct. 2428 ("Ring does not contend that his indictment was constitutionally defective.") (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477, n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting that the Fourteenth Amendment has not been construed to include the Fifth Amendment right to presentment or indictment of a Grand Jury) (internal citation omitted)).

█ Notwithstanding *Ring's* Sixth Amendment based holding, a number of circuits have interpreted *Ring*, when read in conjunction with *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999),[7] to require that at least one statutory aggravating factor and the mens rea requirement be charged in the indictment, pursuant to the Fifth Amendment's grand jury requirement, reasoning that mens rea and statutory aggravators, in a capital case, are the functional equivalents of elements of the offense. *See United States v. Allen*, 406 F.3d 940, 943 (8th Cir.2005) (en banc) (holding "the Fifth Amendment requires at least one statutory aggravating factor [8] and the mens rea requirement to be found by the grand jury and charged in the indictment ... because that is what is required to elevate the available statutory maximum sentence from life imprisonment to death"); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir.2004) ("*Ring's* Sixth Amendment holding applies with equal force in the context of a Fifth Amendment Indictment Clause challenge ... [and][a]s a result, the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is constitutional error."); *United States v. Higgs*, 353 F.3d 281, 299 (4th Cir.2003) ("So long as one statutory aggravating factor is alleged in the indictment and the petit jury finds that statutory aggravating factor to exist, the indictment is not defective as to the capital offense charged."); (*United States v. Quinones*, 313 F.3d 49, 53 n. 1 (2d Cir.2002)) (noting that *Ring* now requires statutory aggravating factors be "alleged in the indictment and found by a jury in capital cases"). Although the Sixth Circuit has not directly commented on *Ring's* application to the Fifth Amendment's grand jury requirement, this Court finds persuasive the reasoning set forth by the Eighth,

7. In *Jones*, the Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215.

8. The *Allen* court emphasized that "at least one of the statutory aggravating factors found by the petit jury in imposing the death sentence must have been one of the statutory aggravating factors charged by the grand jury in the indictment ... [and][t]he same is true of the mens rea requirement." *Allen*, 406 F.3d at 943 (internal citation omitted).

Fifth, Fourth, and Second Circuits, and holds that both the mens rea and at least one statutory aggravator found by the petit jury must have been charged in the indictment.

The prosecution in the case sub judice has complied with *Ring's* Fifth Amendment requirements. It charged both the mens rea requirements and all statutory aggravators to the grand jury, listing them in the Indictment under the heading "Special Findings." Thus, Defendant does not, and indeed cannot, argue that his Fifth Amendment Rights have been violated. Instead, Defendant argues that in light of this grand jury requirement, the FDPA must be held unconstitutional because it requires only that the aggravating factors and mens rea requirement be charged in a Notice of Intent to Seek the Death Penalty, not in the indictment itself. *See* 18 U.S.C. § 3593(a).[9]

■ Defendant further argues that the only way to constitutionalize the statute would be for this Court to overstep its authority by rewriting the statute. Defendant's arguments are without merit. *See United States v. Williams*, No. S100CR.1008, 2004 WL 2980027, at *11 (S.D.N.Y. Dec. 22, 2004) ("[N]othing in the FDPA must be 'rewritten' to comply with *Ring* and *Jones*. There is simply no language in the FDPA that even mentions grand jury findings, let alone prohibits them with respect to facts constituting aggravating circumstances."); *see also Allen*, 406 F.3d at 949 (finding nothing in the Act precludes the government from ... submitting [aggravating factors and the requisite mental state] to the grand jury for inclusion in the indictment, concluding "[t]his is the practice the Department of Justice has adopted after *Ring*, and it

preserves the constitutionality of FDPA prosecutions"). Because the statute can be construed to allow the submission of statutory aggravating factors and the mens rea requirement to the grand jury, as the prosecution did in the case sub judice, and because doing so preserves Defendant's Fifth Amendment rights, the Court **DENIES** Defendant's motion to declare the FDPA unconstitutional in light of *Ring. See Almendarez–Torres v. United States*, 523 U.S. 224, 237–38, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.") (citations omitted).

Second, Defendant argues that the FDPA violates the non-delegation doctrine by allowing the prosecution, a part of the Executive branch, to choose arbitrarily as many nonstatutory aggravating factors as it deems appropriate. Defendant asserts that this power to allege various nonstatutory aggravators constitutes an improper delegation of an inherently legislative authority. This non-delegation argument has been summarily and persuasively rejected by the Eighth, Fifth and Tenth Circuits.

The court in *United States v. Jones*, 132 F.3d 232, 239–40 (5th Cir.1998), explained that delegation of congressional power, in the sentencing realm, is permissible "[s]o long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform...." *Id.* at 239 (citing *Mistretta v. United States*, 488 U.S. 361, 390, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (internal citations omitted)). The *Jones* court then concluded that the "authority to define

---

9. Section 3593(a)(1)-(2) requires the government to serve the defendant with a notice stating the government's intent to seek the death penalty and "setting forth the aggrava-

ting factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." *Id.*

nonstatutory aggravating factors falls squarely within the Executive's broad prosecutorial discretion, much like the power to decide whether to prosecute an individual for a particular crime," noting that the legislature, acting alone, could not have adequately anticipated the various circumstances of each crime. *Id.* The court emphasized that this delegation of power is constitutional because it is circumscribed by four factors that, when taken together, form an "intelligible principle" that adequately limit prosecutorial power. First, the prosecution must give prior notice to the defendant with regard to all aggravating factors. *Id.* at 240, 119 S.Ct. 1215; *see* 18 U.S.C. § 3593(a). Second, the non-aggravating factors must "genuinely narrow the class of persons eligible for the death penalty." *Id.* (citing *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). Third, the district court retains its function as "gatekeeper," excluding information it deems irrelevant or too prejudicial. *Id.; see* 18 U.S.C. § 3593(c). Fourth, the nonstatutory aggravators are not even contemplated by the jury unless the jury has already found the requisite mens rea and at least one statutory aggravating factor beyond a reasonable doubt. *Id.; see* 18 U.S.C. § 3593(d).

■ Thus, a prosecutor's power to promulgate nonstatutory aggravating factors is not without an intelligible principle; rather, the prosecution must act within congressionally-mandated and court-imposed constraints. *See United States v. Paul*, 217 F.3d 989, 1003 (8th Cir.2000) (finding no violation of the separation of powers because "the prosecution was adequately limited in its power" by the four factors listed in *Jones* ); *United States v. McCullah*, 76 F.3d 1087, 1106–07 (10th Cir.1996) (finding the notice requirement, the court's power to exclude certain information, and the requirement that the jury first find mens rea and a statutory aggravating factor adequately guided the prosecution's choice of nonstatutory aggravators); *see also United States v. Fell*, 360 F.3d 135 (2d Cir.2004) (citing *Jones* with approval, but without discussion); *United States v. Quinones*, No. 00 CR.761, 2004 WL 1234044, at *2 (S.D.N.Y. June 3, 2004) ("Similarly, allowing the prosecution to present nonstatutory factors does not offend the non-delegation doctrine since 'the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch.' ") (citing *Zant*, 462 U.S. at 878, 103 S.Ct. 2733). This Court agrees with the reasoning set forth in the above cases and holds that because the prosecution's power is limited by an intelligible principle, the FDPA does not violate the non-delegation doctrine by allowing the prosecution to choose nonstatutory factors.

In sum, the Court finds the FDPA facially valid, and therefore, Defendant's various Motions to Declare it Unconstitutional on the basis of the non-delegation doctrine and *Ring* are **DENIED**.[10]

### C. Specific Challenges to the Death Penalty Notice

Having dispensed with facial challenges to the FDPA, the Court now turns to

---

**10.** To the extent Defendant makes an Eighth Amendment argument that the death penalty, under all circumstances, constitutes cruel and unusual punishment in violation of the Eighth Amendment, this argument has been foreclosed by the Supreme Court. *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ("[T]he infliction of dea[th] as a punishment for murder is not without justification and thus is not unconstitutionally severe."); *see Agostini v. Felton*, 521 U.S. 203, 238, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (holding that lower courts must follow Supreme Court case law "unless and until this Court reinterpret[s] the binding precedent").

Defendant's specific challenges to the NOI. Although the sentencing jury is to consider all the available information relevant to its weighty determination, there are, of course, limits on what types of aggravating factors, both statutory and nonstatutory, the prosecution can present to the jury. Death penalty jurisprudence has identified several guideposts for determining what constitutes an improper aggravating factor. It is widely recognized that due to the FDPA's weighing scheme, *each* factor can be the one that tips the scales in favor of death. *See Jones v. United States,* 527 U.S. 373, 398, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("[T]he weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor.") (citing *Stringer v. Black,* 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)).

■■■ First, the aggravator may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Stated differently, "it the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the [factor] is constitutionally infirm." *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). Second, the aggravating circumstance may not be unconstitutionally vague, so as to lack "some common-sense core meaning . . . that criminal juries [are] capable of understanding." *Tuilaepa,* 512 U.S. at 972–73, 114 S.Ct. 2630. Third, the aggravator must be "sufficiently relevant to the question of who should live and who should die." *United States v. Grande,* 353 F.Supp.2d 623, 634 (E.D.Va.2005) (striking a factor because "a high school fight is unconstitutionally irrelevant to the determination of 'who should live and who should die' ") (citing *United States v. Davis,* 912 F.Supp. 938, 943 (E.D.La. 1996)). Fourth, even if the aggravator appears relevant to the jury's determination, information may be excluded "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c); *see also United States v. Friend,* 92 F.Supp.2d 534, 541 (E.D.Va. 2000) (deeming it "essential that an aggravating factor be measured in perspective of the fundamental requirement of *heightened reliability* that is the keystone in making 'the determination that death is the appropriate punishment in a specific case' ") (citing *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).[11] Fifth, some courts have held that an aggravating factor cannot be duplicative of another aggravating factor. *United States v. McCullah,* 76 F.3d 1087, 1111–12 (10th Cir.1996).[12]

**11.** The Supreme Court has emphasized that "heightened reliability" is essential during death penalty proceedings due to the finality of the result. *See Woodson,* 428 U.S. at 305, 96 S.Ct. 2978 ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long, [thus] . . . there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."). To achieve this heightened degree of reliability, "the Supreme Court has also made clear that.. *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors." *United States v.*

*Fell,* 360 F.3d 135, 143 (2d Cir.2004) (citing *Gregg,* 428 U.S. at 203–04, 96 S.Ct. 2909 ("We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision")); *see also Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ("What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.").

**12.** *See infra,* section (III)(C)(2)(b) (discussing duplicative factors in the context of Defendant's prior conviction).

Against this backdrop, the Court addresses Defendant's specific challenges to the NOI.

### 1. Statutory Aggravating Factors

Defendant asks this Court to strike various statutory aggravating factors from the NOI, including "Death During Commission of Another Crime," 3592(c)(1); "Grave Risk of Death to Additional Persons," 3592(c)(5); and "Substantial Planning and Premeditation," 3592(c)(9).

### a. Death During Commission of Another Crime

Defendant moves to strike the statutory aggravating factor of "Death During Commission of Another Crime" on the grounds that it is duplicative of Count One, as charged in the Indictment. Count One of the Indictment reads:

> Beginning on or about August 7, 2003, and continuing through and including August 9, 2003, in Southern District of Ohio and elsewhere, the defendant, JOHN RICHARD MAYHEW, JR., did willfully and unlawfully kidnap, abduct, and carry away [Kristina] McKibben in interstate commerce from the Southern District of Ohio to the state of West Virginia, and did hold her for ransom, reward or otherwise, resulting in the death of [Kristina] McKibben. In violation of 18 U.S.C. § 1201.

*Id.* If the jury convicts Defendant on Count One and finds that Defendant caused Kristina's death, then this case will proceed to the sentencing phase, at which point the government will try to prove at least one aggravating factor to the jury, beyond a reasonable doubt. The first statutory aggravator, Defendant argues, is essentially duplicative of Court One of the Indictment, of which the jury will already

have found Defendant guilty. The first statutory aggravating factor, in full, reads:

> *Death During Commission of Another Crime.* The Defendant caused the death, or injury resulting in death, of [Kristina] McKibben, during the commission or attempted commission of, or during the immediate flight from the commission of, the offense of kidnaping, in violation of 18 U.S.C. § 1201 (18 U.S.C. (c)(1)).

NOI at (B)(1).

Defendant argues that using the kidnapping[13] and subsequent death of Kristina in both the Indictment and as a statutory aggravating factor will fail to narrow adequately the class of individuals eligible for the death penalty, thereby violating Defendant's constitutional rights. *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' ") (citing *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). Defendant relies primarily on *United States v. Kaczynski,* No. CR–S–96–259, 1997 WL 716487 (E.D.Cal.1997) and *United States v. McVeigh,* 944 F.Supp. 1478 (D.Colo.1996), in which both courts agreed with Defendant's argument, reasoning, the narrowing function of an aggravating factor "would be completely undermined if the mere commission of the charged offense could suffice." *Kaczynski,* 1997 WL 716487, at *22. The result of this duplication, the *Kaczynski* court warned, would be to "skew[ ] the weighing process by beginning the penalty phase with one aggravating factor already on death's side of

---

**13.** Violent Crime Control and Law Enforcement Act of 1994, PL 103–322 § 330021(1), 1994 HR 3355, (substituting "Kidnapping" for "Kidnaping" in 18 U.S.C. § 1201).

the scale." *Kaczynski*, 1997 WL 716487 at *23.

■ The majority of courts, however, have rejected this argument, holding, instead, that Congress, in drafting the FDPA, anticipated that the sentencing jury would consider the circumstances of the underlying crime, and thus, incorporated it into the FDPA as a statutory aggravator. *See* 18 U.S.C. § 3592(c)(1) (listing "death during commission of another crime" as an aggravating factor). Further, duplication occurs when the jury is asked, at the sentencing stage, to consider two or more *aggravating factors* that are essentially interchangeable;[14] here, however, the sentencing jury will only consider the underlying crime one time during the trial phase and one time during sentencing phase, not twice during the latter. *See United States v. Frank*, 8 F.Supp.2d 253, 276–77 (S.D.N.Y.1998) ("Once the penalty phase has begun, the jury is asked to consider *only once* the fact that the murder occurred in the course of the commission of another crime. That the jury may find it relatively easy, based on its guilty verdict, to find the existence of this factor does not unfairly tip the scales toward death."); *see also United States v. Jones*, 132 F.3d 232, 249 (5th Cir.1998) ("the kidnapping was weighed *only once* by the jury during the penalty phase of the trial"). Finally, "the jury should be guided as to how it should weigh the connection between a victim's death and Defendant's predicate crimes." *United States v. Bin Laden*, 126 F.Supp.2d 290, 301 (S.D.N.Y. 2001) (" 'To expect the jury to shut out entirely the circumstances of the underlying offense at the penalty phase blinks reality' " and will only "increase the risk of arbitrariness.") (citing *Frank*, 8 F.Supp.2d at 277). Indeed, the Court is particularly troubled by the notion of asking the jury to determine Defendant's sentence without allowing the jury to consider the crime itself.

As applied to the case sub judice, the Court finds that Count One of the Indictment and the first statutory aggravating factor are non-duplicative; thus, Defendant's motion to strike the first statutory aggravating factor is **DENIED.**

### b. Grave Risk of Death to Additional Persons

■ This aggravating factor, listed in conjunction with Counts One and Seven, reads: "in the commission of the offense, or in escaping apprehension for the violation of the offense, [Defendant] knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense." 18 U.S.C. § 3592(c)(5). Defendant asserts that the government has not provided enough information in the NOI to properly identify who, exactly, suffered a grave risk of death as a result of Defendant's alleged actions. The government asserts it is not required to give notice of the specific evidence it will present in support of aggravating factors. The government's argument is well-taken. *See United States v. Williams*, No. S100CR.1008, 2004 WL 2980027, at *17 (S.D.N.Y. Dec. 22, 2004) (noting that "notices of intent generally need not list specific evidence"); *see also United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999) ("The Govern-

---

**14.** As the Tenth Circuit noted in *United States v. McCullah*, 76 F.3d 1087, 1111 (10th Cir. 1996):

[D]ouble counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally.... [W]hen the same aggravating factor is counted twice, the defendant is essentially condemned twice for the same culpable act, which is inherently unfair.

*Id.* (finding two aggravating factors duplicative).

ment is not required to provide specific evidence in its notice of intent."); *United States v. Roman*, 371 F.Supp.2d 36 (D.P.R. 2005) ("[T]he government need not disclose its evidence on the notice of intent"); *United States v. Nguyen*, 928 F.Supp. 1525, 1545 (D.Kan.1996) (concluding that the government's notice of intent to seek the death penalty need only list the aggravating circumstances and need not provide details about the evidence the government intends to offer in support). Thus, Defendant's Motion to Strike the Aggravating Factor alleging that the Defendant "knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense" is **DENIED.**[15]

**15.** Defendant also objected to the government's intent to introduce the killing of Frank Rigsby and Tamara McKibben as support for the "Grave Risk" aggravating factor, citing undue prejudice. Although the government has indicated its intent to introduce evidence of the killing or attempted killing of Frank Rigsby, Tamara McKibben, and the state trooper under the "Grave Risk" aggravator, the Court finds that Defendant's alleged interactions with these individuals are more appropriately raised under the "Multiple Killings or Attempted Killings" aggravator. As various courts have indicated, the "Grave Risk" aggravator is more properly associated with bystanders in the zone of danger, e.g., the West Virginia drivers who may have been endangered by the car chase, but who were not actually physically harmed by Defendant's actions.

A sharp distinction has been drawn between "Grave Risk" and "Multiple Killings or Attempted Killings," which are both listed as aggravating factors in this case's NOI. These courts have found that "Grave Risk of Death to One of More Persons in Addition to the Victims of the Offense," refers to, e.g., "bystanders who were not shot, but were nearby and within the zone of danger created by [the] shooting," *United States v. Le*, 327 F.Supp.2d. 601, 613 (E.D.Va.2004), while "Multiple Killings or Attempted Killings" relates to actual victims of the offense, e.g., "the four gang members ... Le allegedly shot, two of whom were killed and two of whom were wounded." *Id.* at 613; *see also United States v. Bin*

### c. Substantial Planning and Premeditation

Additionally, the government, in conjunction with Counts One and Seven, alleges that Defendant committed the crimes "after substantial planning and premeditation," a statutory aggravator set forth in 18 U.S.C. 3592(c)(9). Defendant argues that the word "substantial" is unconstitutionally vague and that the factor, more generally, violates the Eighth Amendment by failing to narrow the category of defendants who are death eligible. Specifically, Defendant argues that it no longer serves as "a meaningful basis for distinguishing the few cases in which [the penalty] is

*Laden,* 126 F.Supp.2d 290, 300 (holding "[the grave risk aggravator] relates to Defendants' mental state with respect to persons who were not the intended victims of the bombings," but the multiple killings/attempted killings aggravator "focuses on Defendants' particular desire that there be multiple victims, rather than just one—i.e., the sheer magnitude of the crime.") *See also United States v. Barnette*, 211 F.3d 803, 819 (4th Cir.2000) (upholding the district court's use of a jury instruction defining the meaning of grave risk of death as "a significant and considerable possibility" of placing other persons in a "zone of danger"); *United States v. McVeigh*, 944 F.Supp. 1478, 1488 (D.Colo. 1996) (noting that the "Grave Risk" aggravating factor, when viewed in the context of bombing of the Murrah Building in Oklahoma City, applied to those who were not injured, but could have been).

In the event that Defendant objects to introducing the alleged incidents involving Frank Rigsby, Tamara McKibben, and the state trooper in support of the "Multiple Killings or Attempted Killings" aggravator, the Court rejects this argument. The Court finds that these incidents were inextricably intertwined with the underlying alleged crimes and will have likely been introduced during the trial phase. Moreover, the "Multiple Killings or Attempted Killings" aggravator was charged to the grand jury. Thus, this evidence does not carry undue prejudice, nor is its unadjudicated nature dispositive of its admissibility.

imposed, from the many cases in which it is not." (Def.'s Br. No. 95 at 9, citing *Godfrey v. Georgia,* 446 U.S. 420, 427, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)).

■ As for Defendant's Eighth Amendment claim, an aggravating factor, to comport with the Eighth Amendment, must " 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Zant,* 462 U.S. at 867, 103 S.Ct. 2733). The Court finds that this factor adequately "assist[s] the jury in distinguishing 'those who deserve capital punishment from those who do not....' " *McVeigh,* 944 F.Supp. at 1488 (quoting *Arave,* 507 U.S. at 474, 113 S.Ct. 1534). As stated by the court in *United States. v. Minerd,* 176 F.Supp.2d 424, 439 (W.D.Pa. 2001), "[n]ot every murder involves substantial planning and premeditation." In the case sub judice, if Defendant is found guilty on the death eligible counts, the jury will then determine whether Defendant's actions involved substantial planning and premeditation.

■ Defendant also asserts that the factor should be stricken for vagueness. Several courts, however, have disagreed. For example, in *United States v. Cooper,* 754 F.Supp. 617, 623 (N.D.Ill.1990), the defendants raised the same argument in the context of 21 U.S.C. § 848(n)(8), an analogous death penalty statute. The court rejected the argument, holding that the words "premeditation" and "planning" are "commonly employed" and "universally understood." *Id.* at 623. Additionally, the court found the " 'substantiality' requirement is frequently encountered and readily understood in a number of contexts in criminal law." *Id.* (citations omitted); *see also United States v. McCullah,* 76 F.3d 1087, 1110 (10th Cir.1996) (rejecting Defendant's vagueness challenge, holding "[i]n the context in which ["substantial"] appears, the term clearly has a common-sense meaning of 'considerable in quantity: significantly large,' which criminal juries are capable of understanding") (citing Webster's Ninth New Collegiate Dictionary 1176 (1991)).[16] Likewise, this Court finds that the aggravator adequately narrows the number of death eligible defendants and is sufficiently comprehensible such that it is not void for vagueness. Defendant's motion to strike the "Substantial Planning and Premeditation" aggravating factor is **DENIED.**[17]

---

**16.** Although not raised by Defendant, the Court notes that "the case law consistently anchors the 'substantial planning and premeditation' to the murder and not merely to the underlying federal offense." *United States v. Roman,* 371 F.Supp.2d 36, 46 (D.P.R.2005) (citing *United States v. Sampson,* 335 F.Supp.2d 166, 209 (D.Mass.2004)) ("The substantial planning and premeditation aggravating factor focuses on the intention to cause death, not on the broader offense, which in this case was carjacking resulting in death."); *see also United States v. Webster,* 162 F.3d 308, 325 (5th Cir.1998) (holding that "by allowing the jury to consider premeditation with respect to the kidnaping and not just the murder, the court improperly charged the jury on the statutory aggravating factor of

whether Webster engaged in 'substantial planning and premeditation' of the offense"); reasoning that section 3592(c)(9) "direct[s] the premeditation to causing death and not to mere commission of the offense when the two diverge."

**17.** In the event the Court denied this request to strike the aggravating factor, Defendant, in the alternative, requested a jury instruction that "has a core meaning that prevents arbitrary application and genuinely narrows the category of murders to which it applies." (Def.'s Br. No. 95 at 10). The Court will hear arguments regarding sentencing phase jury instructions, should they be necessary, at a later date.

### 2. Nonstatutory Aggravating Factors

Defendant also moves to strike various portions of nonstatutory aggravators. For both Counts One and Seven, the government's NOI alleges two statutory aggravators: "Future Dangerousness" and "Victim Impact Evidence." The Court addresses each in turn.

#### a. Future dangerousness.

Defendant's challenge the first nonstatutory aggravating factor, listed in conjunction with Counts One and Seven, on several grounds. The factor, titled "Future Dangerousness," contains various subparts, and reads as follows:

*Future Dangerousness to Lives and Safety of Others.* The defendant represents a continued danger to the lives and safety of others. The defendant has committed the acts alleged in the capital offenses charged in the Indictment and in the statutory aggravating factors contained in this Notice and, in addition, has committed and exhibited acts and characteristics, including but not limited to one or more of the following:

(a) Low rehabilitative potential—The defendant has demonstrated a low potential for rehabilitation as evidenced by the following:

(i) The defendant has committed a similar crime in the past. The defendant kidnaped Rachelle Mayhew, on or about April 8, 1992;

(ii) The defendant committed the instant offen[s]e approximately three years after serving eight years in pris-

on for the kidnaping of Rachelle Mayhew;

(b) Threats of violence against others—The defendant threatened to kill Andrew Aspell Jr. on or about August 7, 2003.[18]

█ Defendant first argues that the "Future Dangerousness" umbrella category is duplicative of its subfactor, "Low Rehabilitative Potential." Defendant relies upon *United States v. Nguyen*, 928 F.Supp. 1525, 1544 (D.Kan.1996) and *United States v. Davis*, 912 F.Supp. 938, 946 (E.D.La.1996), to support his claim that "Future Dangerousness" and "Low Rehabilitative Potential" factors are duplicative. Indeed, both *Nguyen* and *Davis* address similar challenges. In those cases, however, the government listed "Future Dangerousness" and "Low–Rehabilitative Potential" as *separate nonstatutory factors*. Both courts noted that "Low Rehabilitative Potential" would be an acceptable subpart of "Future Dangerousness." See *Nguyen*, 928 F.Supp. at 1544 (holding the government "may submit rehabilitation evidence under the [future dangerousness] factor" as a circumstance in support of the future dangerousness factor); *Davis*, 912 F.Supp. at 946 ("[Low rehabilitative potential] may therefore be combined with [future dangerousness], but it is not appropriate as a separate freestanding factor."). In the case sub judice, the government lists "Low Rehabilitative Potential" as way to prove "Future Dangerousness." Thus, because "Low Rehabilitative Potential" is a subfactor of "Future Dangerousness" and because this

---

**18.** On July 25, 2005, the government moved to amend the death notice by striking the NOI's reference to the defendant's intentional killing of Franklin Rigsby and Tamara McKibben. Defendant does not object to this motion. The Court hereby **GRANTS** that motion, Docket No. 159, and amends the NOI to strike (C)(1)(b) from the death notice. ("Violence against others—the defendant intention-

ally killed Franklin Rigsby and Tamera McKibben on or about August 7, 2003."). Prior to this amendment, Defendant had moved to strike this factor's reference to these alleged murders because of their unadjudicated nature. The Court, in light of the government's motion, need not address those concerns as they relate to the "Future Dangerousness" aggravator.

configuration precludes the jury from weighing the same factor twice, the Court finds the two factors non-duplicative. *See United States v. Taylor,* 316 F.Supp.2d 730, 742–43 (N.D.Ind.2004) ("[T]his Court finds that the Government has properly included 'low-rehabilitative potential' as a circumstance to be considered as evidence of the Defendants' future dangerousness."); *United States v. Davis,* No. CR.A. 01–282, 2003 WL 1873088, at *10 (E.D.La. Apr. 10, 2003) (approving the government's use of "low rehabilitative potential" as a subfactor of "future dangerousness," because the problem of "overlap" found in *Davis* and *Nguyen* was not present). In short, the Court finds Defendant's argument regarding the duplicative nature of "Future Dangerousness" and "Low Rehabilitative Potential" is without merit.

Second, Defendant argues that the government should be precluded from referencing Defendant's alleged threat of violence to Andy Aspell, Jr. in support of "Future Dangerousness" because of its unadjudicated nature. Although the government alleges that Defendant, while at the residence of Franklin Rigsby and Tamara McKibben, threatened Tamara McKibben's son, Andy Aspell, Jr., with his gun, Defendant emphasizes that he has never been indicted—let alone convicted—of this offense. Such unadjudicated conduct, Defendant asserts, violates his Fifth Amendment right, fails to meet the Eighth Amendment's requirement of heightened reliability at the sentencing phase, and, in any event, will be more prejudicial than probative. For the following reasons, the Court rejects these arguments.

Defendant's Fifth Amendment argument relies on *United States v. Green,* 372 F.Supp.2d 168, 2005 WL 1308877 (D.Mass. June 2, 2005). There, two defendants were charged with killing the victim "for the purpose of maintaining and increasing position in the Enterprise, which was an Enterprise engaged in racketeering activity." *United States v. Green,* 324 F.Supp.2d 311, 315 (D.Mass.2004). In *Green,* the government's NOI contained allegations of prior crimes that were neither charged in the indictment nor adjudicated in any court, including an arson-murder unrelated to the charged crime and two seemingly unrelated attempted murders. The court cogently explained that "[s]urely it cannot be said that a prior unadjudicated crime, entirely separate from the charged offense, comes with the substantial procedural safeguards accompanying a prior conviction, *or factors intertwined with the trial of the charged offense.*" *Green,* at 322–23 (emphasis added).

 In the case sub judice, the contested unadjudicated conduct, the alleged threat to kill Andy Aspell Jr., will be wholly intertwined with the adjudication of both Counts One and Seven. As this Court has already held, in a previous opinion issued on June 22, 2005, the circumstances surrounding the alleged kidnapping of Kristina will be admissible at trial to prove, in conjunction with the kidnaping charge, that Defendant seized Kristina against her will. The threat toward Andy Aspell Jr., is similarly applicable to Count Seven's predicate offense, interstate stalking, because the government must prove that Kristina was in "reasonable fear of death and serious bodily injury to herself or a member of her family." 18 U.S.C. § 2261A. *See United States v. Al–Zubaidy,* 283 F.3d 804, 808–09 (6th Cir.2002) (noting that § 2261A requires the government to prove "that the person [a defendant] intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel"). Where a nonstatutory aggravator is inextricably linked to the charged offense, it is also linked to "the procedural protections that attend the case-in-chief," thereby

avoiding the constitutional transgressions inherent in allowing unadjudicated and uncharged conduct to tip the scales in death's favor. *Green*, at 322–23. Because the threat to Andy Aspell, Jr. is related, and because this conduct will likely have been introduced during the trial phase, Defendant's Motion to Strike Nonstatutory Aggravating Factor (c)(1)(C) on the basis of Fifth and Sixth Amendment Violations is **DENIED.**

 A similar analysis applies to Defendant's alternative argument, in which he asserts that the unadjudicated conduct both violates the heightened reliability mandated by the Eighth Amendment and is more prejudicial than probative.[19] Defendant relies heavily on *United States v. Gonzales*, No. 3:02CR7, 2004 WL 1920492, at *3 (D.Conn. Aug. 27, 2004), in which the court excluded four unadjudicated and unrelated murders, holding such evidence would unfairly prejudice the defendant and noting, as well, that less drastic curative measures would be insufficient to remedy the prejudice inherent in such evidence. *Gonzalez*, while persuasive and undoubtedly legally sound, is inapplicable in the case sub judice because, as stated with regard to Defendant's Fifth Amendment concerns, the unadjudicated conduct is inextricably linked to the predicate crimes. Indeed, the court in *Gonzalez* carefully distinguished between conduct related to the underlying crime and conduct unrelated to the charged crime, concluding that only *unrelated* unadjudicated crimes warrant exclusion:

> [T]he nonstatutory aggravating factor alleged is based on four completely unrelated and as yet unadjudicated murders. *While it is generally appropriate in a death penalty case for a jury, even*

*if incited by the facts of the underlying crime, to consider the facts of the underlying crime as aggravators in considering whether the death penalty is appropriate*, it is entirely inappropriate for the jury's incitement over the underlying crime to impact its consideration of whether the defendant committed the other crimes alleged.

*Gonzalez*, at 320 (emphasis added); *see also United States v. Grande*, 353 F.Supp.2d 623, 634 (E.D.Va.2005) (stating that *related* unadjudicated conduct, such as defendant having "imped[ed][an] investigation of the murders the defendant was being tried for," is admissible, but finding that conduct "wholly unrelated" to the current charge, such as "a high school fight that took place five years ago," is not). Here, because the alleged threat of violence to Andy Aspell, Jr. is inextricably intertwined with the predicate alleged crimes (Counts One and Seven) and thus entirely probative of Defendant's actions, and because the conduct will already have been introduced during the trial phase, it is admissible. *See United States v. Ortiz*, 315 F.3d 873, 902 (holding evidence of the defendant's lack of remorse, introduced at the penalty phase, was permissible because the same evidence had been relied on at trial; reasoning, "[i]nformation admissible in the guilt phase undoubtedly may be argued and considered by the jury in the penalty phase") (citing *United States v. Davis*, 912 F.Supp. 938, 946 (E.D.La.1996)). Furthermore, unlike the situation in *Gonzalez* in which the only witnesses to the unadjudicated murders were paid co-defendants, the government, here, has indicated its intent to provide more reliable testimony, including an eyewitness account. *Gonzalez*, at 322–23

---

**19.** Although the Federal Rules of Evidence are inapplicable during the sentencing phase, the Court will act as a gatekeeper and exclude any information "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

(D.Conn.2004) ("The Government is relying almost exclusively on the testimony of cooperating and accomplice witnesses.... Such evidence is of the kind that is traditionally viewed with great caution, because such witnesses may have motives to testify falsely."). Thus, the contested evidence has substantial indicia of reliability. Moreover, it will not create a danger of unfair prejudice, confusion of the issues, or misleading the jury. In sum, barring any unforeseen occurrences during the trial phase and assuming, *arguendo,* that this case reaches the sentencing phase, the Court will admit evidence of the threat of violence toward Andy Aspell, Jr. to support the nonstatutory aggravator of "Future Dangerousness." [20]

### b. Prior Conviction for Kidnapping

Defendant asks this Court to limit the ways in which the government can adduce evidence of Defendant's 1992 prior conviction for the kidnapping of Rachelle Mayhew. This kidnapping with gun specification, for which Defendant was convicted in the Franklin County, Ohio, Court of Common Pleas on or about August 31, 1992, is listed in the NOI twice: once as a statutory factor in and of itself, "Previous Conviction of Violent Felony Involving Firearm," and a second time in support of a nonstatutory aggravator, "Future Dangerousness."

■ First, Defendant argues that the government should not be permitted to use the 1992 conviction as a factual predicate for an aggravating factor in Count One, and then "recast" it as a nonstatutory aggravator supporting "Future Dangerousness." As a threshold matter, this Court notes that, in certain circumstances, two non-identical aggravating factors can be impermissibly duplicative. Because the

FDPA requires the jury to weigh aggravating and mitigating factors when determining the appropriate penalty, "an aggravator that is entirely a subset of another has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *United States v. Bin Laden,* 126 F.Supp.2d 290, 299–300 (S.D.N.Y.2001) (citation omitted). Several courts have struck various aggravators if the one is "entirely a subset of another." *See id.* (finding the nonstatutory aggravating factor "serious injury to surviving victims" subsumed by the "victim impact evidence" nonstatutory aggravator because "[b]oth function to provide the jury with details concerning the widespread human trauma allegedly caused by the accused's criminal conduct, though the Government has apparently limited the former aggravator to surviving victims and the latter to deceased victims only"); *see also United States v. Regan,* 228 F.Supp.2d 742, 751–52 (E.D.Va.2002) (finding two nonstatutory aggravators duplicative because "each element the Government must prove to show Defendant removed 800 pages of classified material from United States Government facilities (Aggravator 15) 'necessarily subsumes' the elements required to show that Defendant removed many other documents out of NRO (Aggravator 16)"); *see generally United States v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996) ("We hold that the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors."). This Court agrees with the above analyses and holds "an aggravating factor that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid per se

---

**20.** Although this decision may appear premature, the Court addresses it in this Order because the parties may raise the contested

evidence, either directly or indirectly, during voir dire.

and should not be submitted to the penalty jury for sentencing consideration." *Bin Laden,* 126 F.Supp.2d at 299.

■ Applying this holding to the NOI in this case, the court concludes that the statutory aggravating factor, "Previous Conviction of Violent Felony Involving Firearm," is not duplicative with the non-statutory aggravator, "Future Dangerousness," which will likely be supported by evidence of the same prior conviction. To prove the statutory aggravator beyond a reasonable doubt, the prosecution must merely demonstrate that "the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person." 18 U.S.C. § 3592(c)(2). The evidence submitted thereunder will be extremely limited because the very fact of the conviction is all that is required to prove that statutory aggravator. On the other hand, with regard to "Future Dangerousness," the fact of the conviction, in and of itself, does not prove future dangerousness. Rather, as indicated by the NOI, the government must demonstrate that the conviction provides some indication of the Defendant's future conduct. The government intends to prove the relationship between the 1992 conviction and "Future Dangerousness" by demonstrating the similarity between the two crimes, (C)(1)(a)(i), and the temporal proximity between Defendant's release from prison for the 1992 crime and the alleged offense in the case sub judice. Stated differently, the conviction's similarity and its temporal proximity to the instant alleged crime, *not the fact of the conviction itself,* will be used to prove "Future Dangerousness." *See Johnson v. Gibson,* 169 F.3d 1239, 1252 (10th Cir. 1999) ("[T]he aggravating circumstance of future dangerousness and prior felony conviction are not duplicative. The former is supported by evidence of the petitioner's potentiality for future dangerous acts, the latter by evidence of petitioner's past acts"). The Court finds the two factors non-duplicative.

Second, Defendant offers to stipulate, at the sentencing stage, to the *nature of* as well as to the existence of the 1992 kidnapping conviction with a firearm specification, thereby eliminating the jury's opportunity to hear the details of the offense either as a statutory or non-statutory factor. The Court need not address this motion now, however, because the government, in its responsive memorandum, indicated it "may be willing to accept such a stipulation," but that Defendant has yet to provide a "proposed stipulation outlining the extent of details surrounding the 1992 kidnapping conviction to which [Defendant] would be willing to stipulate." (Gov't. Resp. No. 154 at 3). The Court will address this issue, if necessary, after the parties have concluded their negotiations.

### c. Victim Impact Evidence

■ Defendant moves to strike "Victim Impact Evidence" as a nonstatutory aggravator, arguing that admission thereof violates the Eighth Amendment and is overly broad. Defendant's arguments are without merit. The statute, at § 3593(a)(2), permits the introduction of victim impact evidence in federal criminal prosecutions.[21]

---

**21.** The statute, in pertinent part, reads:
The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and · may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the at-

Moreover, the Supreme Court has held that there is no per se constitutional bar on victim impact evidence in capital sentencings. *See Payne v. Tennessee*, 501 U.S. 808, 831, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("We hold merely that if a State decides to permit consideration of this evidence, the Eighth Amendment erects no per se bar."). The Supreme Court expanded on this holding in *Jones v. United States*, 527 U.S. 373, 401–02, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), which held that victim impact evidence, presented in a federal capital case pursuant to the FDPA, is not overly broad if it effectively narrows the class of murder defendants eligible for the death penalty by "direct[ing] the jury to the individual circumstances of the case." *Id.* at 402, 119 S.Ct. 2090. The Supreme Court conceded that "every murder will have an impact on the victim's family and friends," but explained, "[e]ven though the *concepts* of victim impact and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized," concluding that "such evidence is surely relevant to the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty." *Id.* at 401–02, 119 S.Ct. 2090.

In the case sub judice, the NOI indicates that the government will present evidence concerning how "the surviving members of the family have been deprived of their loved one and the benefit of having [Kristina] McKibben in their lives." Because this evidence will help to inform the jury about the individual circumstances of the case

and because the Supreme Court has determined this type of evidence constitutionally admissible, Defendant's request to strike the nonstatutory aggravating factor of victim impact evidence is **DENIED.**[22]

### d. Bifurcation of the Sentencing Phase

Defendant moves to bifurcate the sentencing phase of the proceeding, such that the nonstatutory aggravators, "Future Dangerousness" and "Victim Impact Evidence," will be heard only after the jury has found mens rea and at least one statutory aggravator beyond a reasonable doubt. In other words, the government would first have to prove beyond a reasonable doubt Defendant's requisite intent and at least one aggravating factor, as is necessary for imposition of the death penalty. Then, a subsequent phase would allow introduction of nonstatutory aggravating factors, including victim impact evidence, after which the jury would weigh the mitigating factors and all aggravating factors.

As applied to this case, Defendant argues that a bifurcated sentencing phase would allow the jury to determine the presence of a statutory aggravating factor without having heard victim impact evidence, which will likely be emotionally inflammatory in this case. Distilled to its essence, Defendant is arguing that victim impact evidence, when it is presented to the jury simultaneously with the evidence offered to support statutory aggravating factors, is too prejudicial, will likely confuse the issues, and may mislead the jury. Defendant primarily relies on *United*

torney for the government to amend the notice upon a showing of good cause.

18 U.S.C. § 3593(a)(2).

**22.** The Court notes that because "victim impact evidence is potentially relevant, nothing in the Eighth Amendment commands that States treat it differently than other kinds of

relevant evidence," *Payne*, 501 U.S. at 831, 111 S.Ct. 2597, but stresses that the Court will carefully consider the information to be presented at sentencing to ensure the exclusion of information that is more prejudicial than probative.

*States v. Davis*, 912 F.Supp. 938, 949 (E.D.La.1996), in which the court permitted such bifurcation of the sentencing phase, reasoning that a two-part sentencing phase would "insure that the jury's findings as to intent and the statutory factors would not be influenced by exposure to the separate and unrelated nonstatutory factors and information." *Id.* at 949. Since the parties have submitted their briefs on this topic, two other courts have held that where the evidence supporting the nonstatutory aggravating factors will be more prejudicial than probative, will likely confuse the jury, or will mislead the jurors, the sentencing phase can be bifurcated, as the Court can act as gatekeeper to temporarily exclude information that is more prejudicial than probative.

In *United States v. Bodkins*, No. CRIM.A. 4:04CR70083, 2005 WL 1118158, at *7 (W.D.Va. May 11, 2005), the government offered evidence during the penalty phase that, in a non-capital proceeding, would have violated Defendant's rights under the Confrontation Clause because the witness was unavailable and the defendant had not had a prior opportunity for cross-examination. *Id.* at *4 (citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)) (holding that, in criminal cases, testimonial statements made by witnesses out of court are inadmissible if the witness is unavailable to testify and has not been previously cross-examined by the defendant). The court recognized the inapplicability of the Federal Rules of Evidence to penalty phases, noting that the jury, when making such an irrevocable decision, should be privy to as much information as possible, but found that this fact "does not eliminate the function of the judge as gatekeeper of constitutionally permissible evidence." *Id.* (citing *United States v. Fell*, 360 F.3d 135, 145 (2d Cir.2004)). After concluding that nothing in the statute precluded the sentencing phase's bifurcation, the court opted to ex-clude the contested hearsay until after the jury had found one statutory aggravating factor and the requisite mens rea, reasoning that admitting the evidence at the beginning of the sentencing phase would both infringe too much upon the Defendant's right to confront witnesses and confuse the jury. *Id.* at *7 ("While the Government may be correct that this is not a complex case, the court nevertheless finds that a unitary proceeding would create the risk of some juror confusion. Furthermore, a bifurcated proceeding would address any potential *Crawford* issues....").

Similarly, the court in *United States v. Johnson*, 362 F.Supp.2d 1043 (N.D.Iowa 2005) relied upon the Court's gatekeeping power, finding that admitting victim impact evidence simultaneously with evidence offered in support of the mens rea requirement and the statutory aggravating factors would be more prejudicial than probative. *Id.* at 1106. First, the court considered whether the victim impact evidence had any probative value with regard to the statutory aggravating factor evidence, and found no overlap: "[The] probative value [of the nonstatutory aggravating factors] in this case is extraordinarily weak, where the government concedes that it can prove the 'gateway' and 'statutory' aggravating factors without any of the 'penalty phase' information." *Id.* at 1106. The court, however, found tremendous prejudice would be wrought upon the defendant if the jury heard the victim impact evidence in conjunction with mens rea and statutory aggravating factor evidence. In a refreshingly forthright manner, the court explained the overwhelmingly emotional nature of victim impact evidence and the unparalleled ability of such evidence to cloud any reasonable juror's ability to evaluate whether the government has proved mens rea and at least one statutory aggravating factor beyond a reasonable doubt. In speaking about the victim impact evi-

dence presented in a companion case, the court explained as follows:

> I can say, without hesitation, that the "victim impact" testimony presented in Honken's trial was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing trial attorney and federal judge spanning nearly 30 years.... It has now been over four months since I heard this testimony in the *Honken* trial and the juror's sobbing during the victim impact testimony still rings in my ears.... To pretend that such evidence is not potentially unfairly prejudicial on issues to which it has little or no probative value is simply not realistic, even if the court were to give a careful limiting instruction. Rather, such potent, emotional evidence is a quintessential example of information likely to cause a jury to make a determination on an unrelated issue on the improper basis of inflamed emotion and bias—sympathetic or antipathetic, depending on whether one is considering the defendant or the victims' families.

*Id.* at 1106–07.

▆▆▆ The Court agrees with *Davis* and *Johnson* and will bifurcate the sentencing phase on the theory that victim impact evidence has no probative value with regard to the statutory aggravating factors or the mens rea requirement in this case, but that such evidence carries with it a substantial risk of prejudicing the jury. The proceedings will operate as follows. The jury will first determine whether the mens rea requirement and at least one statutory aggravating factor exist. Should the jury find as such, making Defendant death penalty eligible, the parties can then introduce evidence to support the nonstatutory aggravating factors of "Future Dangerousness" and "Victim Impact."

## IV. ANALYSIS OF 18 U.S.C. § 1201

Title 18, section 1201, reads, in pertinent part, as follows:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> > (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary if the person was alive when the transportation began;
> >
> > (2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;
> >
> > (3) any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;
> >
> > (4) the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title; or
> >
> > (5) the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties,
>
> shall be punished by imprisonment for any term of years or for life and, *if the death of any person results*, shall be punished by death or life imprisonment.

18 U.S.C. § 1201(a) (emphasis added).

Defendant argues that 18 U.S.C. § 1201, as charged in the Indictment, is unconstitutional because it requires the government to prove neither proximate cause nor mens rea with regard to the last provision, "if the death of any person results, [defendant] shall be punished by death or life

imprisonment." The statute, Defendant argues, is a strict liability one, a concept the Supreme Court rejected in *Morissette v. United States*, 342 U.S. 246, 262, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (rejecting strict liability for non-regulatory crimes). The government counters that the "death results" provision does not require a showing of either mens rea or proximate causation, and that had Congress intended either, it would have specifically stated as such. The Court holds that the *"if the death of any person results"* provision of 18 U.S.C. § 1201 requires the government to prove proximate causation, but does not require the government to prove that Defendant acted with scienter.

Turning first to Defendant's argument that the government must prove that he intended to kill Kristina McKibben, the court in *United States v. Rebmann*, 226 F.3d 521, 524 (6th Cir.2000) (*Rebmann I*), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 385 (6th Cir.2002), implicitly stated that a similarly worded statute, 18 U.S.C. § 841(b)(1)(C), did not require the government to prove that the defendant intended to cause the victim's death. The relevant statute reads:

> In the case of a controlled substance in schedule I or II ... such person shall be sentenced to a term of imprisonment of not more than 20 years and *if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years* or more than life....

21 U.S.C. § 841(b)(1)(C).

The court explicitly held that the resulting death was an element of the offense, and that the indictment had to charge as such. *Id.* at 524–25 (holding the "if death results" provision of subparagraph (b)(1)(C) of the statute is not a mere sentencing factors applicable to the core crime of distribution set forth in § 841(a), but

rather constitutes an element of a separate crime (distribution resulting in death) that must be charged in the indictment and proved beyond a reasonable doubt). For this Court's purposes, the opinion is instructive because it explains that no mens rea is required in proving the "if death results" element. *Id.* at 525. To reach this conclusion, the court compared § 841(b)(1)(C) to the federal carjacking statute, which explicitly requires mens rea, *see* 18 U.S.C. § 2119 ("Whoever, *with the intent to cause death* or serious bodily harm takes a motor vehicle that has been transported ..."), and noted that no such language appears in § 841(b)(1)(C). *Id.* at 525 ("[T]he intent to cause injury or death to another person is omitted from the statute altogether."); *see also United States v. Rebmann*, 321 F.3d 540, 544 (*Rebmann II*) (finding that the government could carry its burden of proof with regard to the "death results" language by proving that the "death resulted from the distribution," and not mentioning any requirement that the defendant intended to kill the victim).

Similarly, in *United States v. Poindexter*, 44 F.3d 406, 408 (6th Cir.1995), the court found no mens rea requirement with regard to a death resulting from an armed bank robbery. There, the defendants, accused of bank robbery, were also charged with killing an innocent driver while escaping from the bank. The relevant statute, 18 U.S.C. § 2113, provides as follows:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, *kills any person*, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death

results shall be punished by death or life imprisonment.

18 U.S.C. § 2113 (emphasis added).

The defendants contested the trial court's use of the following jury instruction because it did not require the jury to find that the defendants intended to kill the driver.

> With respect to the third element the government must show that the defendant killed a person in avoiding or attempting to avoid apprehension for the offense. In order to establish this element the government need not show that a defendant intended to kill the person, but merely that he intended to avoid apprehension, and by his acts in avoiding or attempting to avoid apprehension, caused the person's death.

*Id.* at 408.

■ The Court upheld the district court's use of the following jury instruction, explaining that the word "kill," unlike the term "murder" does not include an element of scienter. *Id.* at 408–09 ("The common understanding of the word 'kill,' in contrast with the term 'murder,' which is defined as '[t]he unlawful killing of a human being by another with malice aforethought, either express or implied,' does not include an element of scienter.") (internal citation omitted); *see also United States v. Allen*, 247 F.3d 741, 782–83 (8th Cir.2001), *vacated and remanded on other grounds by Allen v. United States*, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002) (holding that a conviction under § 2113(e) for armed robbery in which a killing occurs does not require an additional finding of specific intent to kill, reasoning that the statute is like common law felony murder). The Court finds that 18 U.S.C. § 1201, which states "if the death of any person results, shall be punished by death or life imprisonment" does not require that the government prove mens rea.

The language simply contains no indication that such proof is necessary.

The Court disagrees, however, with the government's argument that the government need not show that Defendant's kidnapping proximately caused Kristina McKibben's death. This conclusion is supported by several cases interpreting variations of the phrase, "if the death of any person results," and concluding that although intent to kill is not required, the government must prove beyond a reasonable doubt that the predicate act proximately caused the death.

Recently, the court in *United States v. Davis*, No. CRIM.A. 94–0381, 2005 WL 1074971, at *3 (E.D.La. May 3, 2005), interpreted 18 U.S.C. § 242 to require a showing of proximate cause but not intent to kill. The statute reads:

> Whoever, under color of any law ... willfully subjects any person ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution ... shall be fined under this title or imprisoned not more than one year, or both; and ... *if death results from the acts committed in violation of this section* or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242 (emphasis added).

There, the defendant argued that the "death resulting" language created an "additional" specific intent element that must be charged in the indictment. The court rejected this theory, noting that reading a mens rea requirement into § 242 would make the resulting death "tantamount to a homicide charge, *i.e.* intent to kill." *Id.* at *3. The court held that the statute's lan-

guage, however, did require the government to prove that "death ensued as a proximate result of the accuseds' willful violation of a victim's defined rights." *Id.* at \*3; *see Pearce v. United States,* 261 F.3d 643, 647 (6th Cir.2001) (defining "proximate cause" as a causal connection between the offending conduct and the resulting injury). The *Davis* court further explained that the *Ring* requirement, mandating, *inter alia,* that the requisite mens rea be charged in the indictment and proved to a jury, still applied, but that the mens rea would be proved during later in the proceeding, i.e., during the sentencing phase, as required by the FDPA. *Id.* at \*3.

Several other courts, interpreting similarly-worded statutes, have required the prosecution to prove proximate cause, but not intent to kill. *See United States v. Guillette,* 547 F.2d 743, 748–49 (2d Cir. 1976) (holding "[w]e find the principle of proximate cause embodied in [18 U.S.C. § 241] through the phrase 'if death results,' " reasoning "a fundamental principle of criminal law is that a person is held responsible for all consequences proximately caused by his criminal conduct"); *United States v. Woodlee,* 136 F.3d 1399, 1405 (10th Cir.1998) (holding "[s]ection 245(b) expressly provides the government need only show the defendants' illegal conduct *resulted* in bodily injury; not that the defendants intended bodily injury," noting "the standard 'is one of causation, not state of mind' "); *United States v. Hayes,* 589 F.2d 811, 821 (5th Cir.1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.' "); *United States v. Lewis,* 644 F.Supp. 1391, 1406 (W.D.Mich.1986) (holding "[t]he Government need not prove that the defendants intended John Yarbough to die as a result of their acts," reasoning "[w]here events

are foreseeable and the natural result of one's criminal conduct, the chain of legal causation is unbroken and the perpetrator is held criminally responsible for the resulting harm.").

Thus, this Court holds that the "if the death of any person results" phrase in 18 U.S.C. § 1201 is a separate element that needs to be charged in the indictment and proved beyond a reasonable doubt to the petit jury. The government in the case sub judice complied with this mandate, hence avoiding any violation of Defendant's Fifth and Sixth Amendment rights. The Court further holds that while the "if the death of any person results" language of 18 U.S.C. § 1201 does not contain an intent requirement;[23] it does require the government to prove that Defendant kidnapped Kristina McKibben, and that this act proximately caused Kristina McKibben's death. Defendant's Motion to Declare 18 U.S.C. § 1201 unconstitutional is **DENIED.**

## V. CONCLUSION

Assuming this trial reaches the sentencing phase, the Court grants Defendant's request to bifurcate the sentencing phase. Additionally, the Court will not rule on Defendant's stipulation offer with regard to the details of the 1992 conviction unless the parties fail to reach an agreement. Finally, the Court, while not holding 18 U.S.C. § 1201 unconstitutional, will require the government to prove that the alleged kidnapping proximately caused Kristina McKibben's death.

With regard to all other issues, the Court holds as follows: Defendant's Motion to Dismiss Notice of Aggravating Factors and Declare the Federal Death Penalty Act of 1994 Unconstitutional in Light of

---

**23.** Of course, the requisite intent must be proved to the jury at the sentencing phase, as required by the FDPA.

the Supreme Court's Opinion in *Ring v. Arizona* [Docket No. 94] is **DENIED**; (2) Defendant's Motion to Strike the Statutory and Nonstatutory Aggravating Factors from the Government's Notice of Intent to Seek a Sentence of Death [Docket No. 95] is **DENIED**; (3) Defendant's Motion to Dismiss Nonstatutory Aggravating Factors (C)(1)(a)(b) & (c) Alleged in the Government's Notice of Intent to Seek the Death Penalty for Counts One & Seven [Docket Nos. 130 and 134] is **DENIED**; (4) Motion to Dismiss First Statutory Aggravator Alleged in Count One [Doc. No. 131] is **DENIED**; (5) Defendant's Motion to Declare § 1201(a) Unconstitutional [Docket No. 105] is **DENIED**; and (6) Government's Motion to Amend the Indictment and Notice of Intent to Seek the Death Penalty [No. 159] is **GRANTED.**

**IT IS SO ORDERED.**