**UNITED STATES of America,**
**Appellant**

**v.**

**Abd Al Rahim Hussayn Muhammad AL–NASHIRI, Appellee**

**CMCR 15–002**

United States Court of Military Commission Review.

July 8, 2016

Brigadier General Mark S. Martins, U.S. Army, and Danielle S. Tarin on the briefs for appellant.

Richard Kammen, Mary E. Spears, and Lieutenant Commander Jennifer Pollio, JAGC, U.S. Navy, on the briefs for appellee.

BEFORE THE COURT Mitchell, Presiding Judge, Silliman, Deputy Chief Judge, and Burton, Appellate Judge

## PUBLISHED OPINION
## OF THE COURT

Mitchell, Presiding Judge:

This interlocutory appeal arises from the military judge's decision "that excludes ev-idence that is substantial proof of a material fact in the proceeding." 10 U.S.C. § 950d(a)(2). The procedural history of this case is described in *United States v. Al–Nashiri*, No. 14–001, slip op. at *2 (USCMCR June 9, 2016). The military judge excluded evidence as to

> foreign nationals not on board the USS COLE (DDG 67) but located on the boats servicing USS COLE (DDG 67), individuals located on or around the re-fueling dolphin and any individuals on wharfs or docks in the area are not included in the definition of "[one or more] persons other than the victim [that] was unlawfully and substantially endangered" for consideration under Aggravating Factor #1 as to Charge IV.

AE 248G at 3 (second alteration in original). The military judge ruled, "The Prose-cution is limited to introducing evidence and arguing the remaining crewmembers onboard the USS COLE at the time of the attack are [the persons] who were unlaw-fully and substantially endangered as a result of the alleged attack." AE 248B at 3; AE 248G at 2. We reverse the military judge's decision excluding the following ev-idence: on October 12, 2000, foreign-na-tional civilians not on board the USS COLE[1] were injured or endangered be-cause of their proximity to the explosion that damaged the USS COLE (hereinafter endangerment to foreign-national civil-ians). We remand the case to the military commission.

### The Parties' Contentions

Appellant contends that evidence con-cerning endangerment to foreign-national

---

1. The military judge agreed to permit admis-sion of evidence from foreign-national civil-ian(s) on board the USS COLE at the time of the explosion. *See* AE 248S at 2, 3; AE 248G at 2–3.

civilians is admissible for two reasons. First, on the merits, this evidence is relevant to Specification 1 of Charge IV (Terrorism)[2] because it shows the accused's wanton disregard for and endangerment to foreign-national civilians. *See* Appellant's Br. at 20–22, 31–33 (citing Military Commission Rule of Evidence (Mil. Comm. R. Evid.) 401 and 402; *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010); other citations omitted). Second, in the event of a conviction, during the presentencing phase of the trial, this evidence is admissible to establish aggravating factor number one. *See* Appellant's Reply Br. at 10–13; Appellant's Br. at 14–15.

Appellee counters that the admissible evidence to establish Specification 1 of Charge IV (Terrorism) is limited to the deaths of the seventeen U.S. Navy personnel killed as a result of the explosion because they are the only persons described within Specification 1 of Charge IV as being harmed in the explosion. *See* Appellee's Br. at 8–19. Appellee argues that appellant improperly increased the scope of Specification 1 of Charge IV and changed their theory of liability when the "bill of particulars" was generated to include endangerment to foreign-national civilians. *See id.* at 17–23.

**Statement of Facts**

On September 28, 2011, the Convening Authority referred six charges and seven specifications for trial by a capital military commission pertaining to the explosion in the vicinity of the USS COLE: (I) using treachery or perfidy, 10 U.S.C. § 950t(17); (II) murder in violation of the law of war, *id.* at § 950t(15); (III) attempted murder

in violation of the law of war (two specifications), *id.* at § 950t(28); (IV) terrorism, *id.* at § 950t(24); (V) conspiracy to commit terrorism and murder in violation of the law of war, *id.* at § 950t(29); and (VI) intentionally causing serious bodily injury, *id.* at § 950t(13). Charge Sheet at 2. On November 9, 2011, the Military Commission arraigned appellee on these charges. Appellant's Br. at 2 (citing Tr. 49–51).

Specification 1 of Charge IV (Terrorism) mentions the seventeen Sailors who were killed in the explosion that damaged the USS COLE; however, it does not mention foreign-national civilians. Specification 1 of Charge IV alleges:

> In that Abd al Rahim Hussayn Muhammad al NASHIRI . . ., an alien unprivileged enemy belligerent subject to trial by military commission, did, in or around Aden, Yemen, on or about 12 October 2000, in the context of and associated with hostilities, and in a manner calculated to influence and affect the conduct of the United States government by intimidation and coercion and to retaliate against the United States government, *engage in an act that evinced a wanton disregard for human life, to wit: intentionally detonating an explosives-laden boat alongside USS COLE (DDG 67), resulting in the deaths of seventeen persons* (see Charge II for a list of deceased) onboard USS COLE (DDG 67).

Charge Sheet at 4 (emphasis added).

On October 31, 2014, appellant provided a bill of particulars relating to Specification 1 of Charge IV, which indicated that

---

**2.** Appellant discusses the overt acts supporting the Specification of Charge V (conspiracy). *See* Appellant's Reply Br. at 5; Appellant's Br. at 27, 37–38. The military judge's rulings on the admissibility of endangerment to foreign-national civilians do not address its relevance to the Specification of Charge V (Conspiracy). *See* AE 248S; AE 248G. Appellee's brief mentions conspiracy, but does not address evidence excluded that is relevant to the Specification of Charge V. *See* Appellee's Br. at 21–22, 37. The issue of excluded evidence related to the conspiracy charge is not ripe for our review.

the foreign-national civilians in the vicinity of explosion would provide evidence that Al–Nashiri "engage[d] in an act that evinced a wanton disregard for human life." Appellant's Br. at 16–17 (citing AE 248C). Appellant said that Al–Nashiri "chose a heavily populated and trafficked urban space in which to detonate a bomb alongside USS COLE," Appellant's Br. at 7, and appellant intended to present "some 27 statements of local Yemeni nationals, scores of photographs, and the eyewitness accounts of several sailors onboard the warship." *Id.* at 7–8 (citing AE 248Q at 14–15). Three foreign-national civilians were injured in the blast; however, those injuries were not of sufficient magnitude to constitute "great bodily harm." *Id.* at 8, 10 (citations and footnote omitted).

Appellee objected to admission of evidence on the merits concerning Al–Nashiri endangering foreign-national civilians not on board the USS COLE as an amendment of Specification 1 of Charge IV to include a "new theory of liability" that resulted in a "new and different charge." Appellee's Br. at 16.

**The Military Judge's Findings and Ruling**

The military judge found that Specification 1 of Charge IV stated an offense. *See* AE 248S (citing AE 248B). The military judge did "not view the aggravating factors of R.M.C. 1004(c) as being elements of the offense." AE 246B at 2; *see United States v. Akbar*, 74 M.J. 364, 405 (C.A.A.F. 2015) (holding failure to include aggravating factor in charges was harmless beyond a reasonable doubt because Akbar was already charged with "multiple murder" and Akbar "received actual notice of the aggravating factors prior to his arraignment pursuant to R.C.M. 1004(c)(1) allowing him ample opportunity to prepare for the aggravating factor" (citation omit-

ted)), *cert. filed*, No. 15–1257 (Apr. 6, 2016).

Appellant agreed with the military judge that the "victims" in Charge I (Using Treachery or Perfidy) are "the 17 deceased and 39 injured Sailors referred to and listed by name on the charge sheet" and not the endangered foreign-national civilians. AE 246B at 3; Tr. 5967–5972. The military judge made findings and ordered as follows:

The Government charged the Accused with Terrorism, specifically that he displayed a wanton disregard for human life "in a manner calculated to influence and affect the conduct of the United States government by intimidation and coercion and to retaliate against the United States government . . ." (Specification 1, Charge IV, Charge Sheet, *U.S. v. al Nashiri*). The Government in its charging decision chose not to include any comment about a civilian population, or a group of protected persons in the specification, despite this charging option and theory of liability being specifically allowed in the statute. *See* 10 U.S.C. § 950t(24) and 2012 Manual for Military Commissions, Part IV, pg. IV–19. "Clearly, an accused cannot be convicted of a crime different from that charged." *United States v. Wray*, 17 M.J. 375, 376 (C.M.A. 1984). Given the charging theory chosen by the Government, the argument that evidence of protected persons, especially foreign nationals, not on board the USS COLE (DDG 67) being relevant and probative of a showing of wanton disregard for human life which was "to influence and affect the conduct of the United States government by intimidation and coercion and to retaliate against the United States government" is not persuasive. Therefore this Commission is not going to reconsider its previous ruling. There is no error in the Commission's applica-

tion of law or new facts that warrant reconsideration. The Government is left with the words they decided to charge within Charge IV, Specification 1 and not their newly-defined meaning of "persons onboard USS COLE (DDG 67)." AE 248S at 4. With this ruling, the military judge excluded any evidence of endangerment to foreign-national civilians not onboard the USS COLE on the merits and during the presentencing phases of the trial, with respect to the element of "wanton disregard for human life" in Specification 1 of Charge IV. *See* AE 248G at 3; AE 246B at 2–3.

### Standard of Review

 We review the military judge's decisions regarding admissibility of evidence for an abuse of discretion. *United States v. McGill*, 815 F.3d 846, 880 (D.C. Cir. 2016) (per curiam); *United States v. Khanu*, 662 F.3d 1226, 1231 (D.C. Cir. 2011) (per curiam) (citing *United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994)). "Evidentiary issues which involve factual determinations, rather than questions of law, are reviewed for an abuse of discretion. When a mixed question of law and fact is presented, the standard of review turns on whether factual or legal matters predominate." *United States v. Powell*, 936 F.2d 1056, 1063 (9th Cir. 1991) (citation omitted).

 When the military judge's exercise of discretion is determinative or the review is " 'essentially [a] factual' inquiry . . ., then we give deference to the decision of the [military judge]; otherwise we conduct a *de novo* review." *Id.* (citation omitted). "However, to the extent the [military judge's] admission of evidence was based on an interpretation of the Federal Rules of Evidence, the standard of review is plenary." *United States v. Ciavarella*, 716 F.3d 705, 724 n.8 (3d Cir. 2013) (quoting

*United States v. Bobb*, 471 F.3d 491, 497 (3d Cir. 2006)); *see United States v. Ellis*, 68 M.J. 341, 344 (CAAF 2010). "An error of law is, by definition, an abuse of discretion." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (citing *United States v. Singh*, 518 F.3d 236, 251 (4th Cir. 2008)), *aff'd*, 789 F.3d 358 (4th Cir. 2015); *see United States v. Khadr*, 717 F.Supp.2d 1215, 1234–38 (USCMCR 2007) (concluding military judge's decision to disregard applicable law is reviewed de novo).

### Admissibility during the Findings Phase

The Military Commissions Act (MCA) of 2009 provides for the offense of Terrorism as follows:

> Any person subject to [trial by military commission] who intentionally kills or inflicts great bodily harm on one or more protected persons, or intentionally engages in an act that evinces a wanton disregard for human life, in a manner calculated to influence or affect the conduct of government or civilian population by intimidation or coercion, or to retaliate against government conduct, shall be punished, if death results to one or more of the victims, by death or such other punishment as a military commission under this chapter may direct, and, if death does not result to any of the victims, by such punishment, other than death, as a military commission under this chapter may direct.

10 U.S.C. § 950t(24). The elements of Terrorism are as follows:

> (1) The accused intentionally killed or inflicted great bodily harm on one or more protected persons or engaged in an act that evinced a wanton disregard for human life;
>
> (2) The accused did so in a manner calculated to influence or affect the conduct of government or civilian population by intimidation or coercion, or to

retaliate against government conduct; and

(3) The killing, harm or wanton disregard for human life took place in the context of and was associated with hostilities.

Manual for Military Commissions (M.M.C.), pt. IV, ¶ 5(24)b. Unlike the Manual for Courts–Martial (MCM), the M.M.C. does not include sample specifications.[3]

██ Appellant states the language, "deaths of 17 persons onboard USS COLE," was included in Specification 1 of Charge IV "to satisfy the punishment portion of the statute, not to identify how it would prove the act-evincing-a-wanton-disregard-for-human-life element." Appellant's Reply Br. at 7; see Appellant's Br. at 29, 35. Inclusion of the deaths of the seventeen Sailors in this specification "render[s] Al Nashiri eligible for the death penalty." Appellant's Reply Br. at 8. Appellant explains that because no foreign-national civilians were killed or incurred "great bodily harm" in the blast, the government intentionally elected to exclude any reference to the names of those who were injured or endangered in Specification 1 of Charge IV. See Appellant's Br. at 10–11. Appellant further explains that prosecutors intended to allege that "intentionally detonating an explosives-laden boat alongside USS COLE in Aden Harbor was 'an act that evinces a wanton disregard for human life.'" Appellant's Br. at 10 (quoting MCM, pt. IV ¶ 43c(4)(a) to define "wanton disregard for human life").

Rule for Military Commissions 307(c) describes the content of a specification as follows:

(3) *Specification.* A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication. Except for aggravating circumstances under R.M.C. 1001(b)(2), facts that increase the maximum authorized punishment must be alleged in order to permit the possible increased punishment. No particular format is required.

The military judge's decision to exclude evidence of endangerment to foreign-national civilians is based on the theory that this evidence might result in Al–Nashiri being convicted of Terrorism under a different theory than that alleged in Specification 1 of Charge IV. See AE 248S at 4. The military judge cited *United States v. Wray, id.*, a Court of Military Appeals decision that set aside a conviction because an accused was charged with larceny by taking, but court members found Wray guilty by exceptions and substitutions of larceny by withholding, an improper variance. See *Wray*, 17 M.J. at 376 (citing *Dunn v. United States*, 442 U.S. 100, 106–07, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979)).

 Based on our reading, the military judge was attempting to proactively avoid a potential variance by excluding evidence. "A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal

---

**3.** We agree with appellant's contention that listing names of endangered foreign-national civilians in Specification 1 of Charge IV is unnecessary because all that is required is that the "[i]ndictment tracks the language of the statute and sets out all of the elements of the offenses charged." Appellant's Br. at 29–30 (quoting *United States v. Abdi*, 498

F.Supp.2d 1048, 1055 (S.D. Ohio 2007); citing *Young v. United States*, 288 F.2d 398, 400 (D.C. Cir. 1961) (holding it is not necessary to allege the identity of the person to be robbed); other citations omitted). Details about the offense can be provided during the pretrial discovery process.

offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." *United States v. Lovett*, 59 M.J. 230, 235 (C.A.A.F. 2004) (quoting *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999)), *aff'd*, 63 M.J. 211 (C.A.A.F. 2006). A variance "may not be used to substantially change the nature of the offense or to increase the seriousness of the offense or the maximum punishment for it." *Id.* (quoting R.C.M. 918(a)(1); second citation omitted).

■ Under the Uniform Code of Military Justice, "[m]inor variances that do not change the nature of the offense are not necessarily fatal." *Id.* (citations omitted). A charge must be set aside if there is a material variance and prejudice to the accused. *Id.* at 235–36 (citing *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003)). The Court of Appeals for the Armed Forces listed three ways prejudice can result from a material variance: (1) the accused is exposed to the "risk of another prosecution for the same conduct"; (2) the accused was "misled to the extent that he has been unable adequately to prepare for trial[ ]"; and (3) the variance "changes the nature or identity of the offense and [the accused] has been denied the opportunity to defend against the charge." *Id.* at 236 (citations omitted).

Here, the charge has not been amended, and the evidence appellant cited relating to endangerment to foreign-national civilians tends to support the government's allegation that the magnitude, timing, and location of the explosion was designed to cause intimidation or coercion and evinced a wanton disregard for all persons in close proximity to the explosion. Appellant provided ample notice of the government's intention to offer evidence of endangerment to foreign-national civilians.

Part III of the M.M.C. details the Mil. Comm. R. Evid. The military judge excluded appellant's evidence without discussing the applicability of the Mil. Comm. R. Evid. *See* AE 248S. Federal Rules of Evidence (Fed. R. Evid.) 401, 402, 403, and 404(b) are similar to Mil. Comm. R. Evid. 401, 402, 403, and 404(b).

### Relevance of Endangerment to Foreign–National Civilians as Res Gestae or Intrinsic Evidence

■ "A threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes." *McGill*, 815 F.3d at 879. An act that is "intrinsic" to the crime is not subject to the limitations of Fed. R. Evid. 404(b). *Id.* "If the so-called 'intrinsic' act is indeed part of the crime charged, evidence of it will, by definition, always satisfy [Fed. R. Evid.] 404(b)." *United States v. Bowie*, 232 F.3d 923, 927 (D.C. 2000); *see also United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (per curiam) ("When evidence of such acts is 'intrinsic' to the charged crime, it is not evidence of 'other' acts and is thus wholly unregulated by [Fed. R. Evid.] 404(b)." (citations omitted)), *aff'd sub nom. Smith v. United States*, 568 U.S. 106, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013). " 'Intrinsic' evidence encompasses evidence that is either 'of an act that is part of the charged offense' or is of 'acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.' " *Moore*, 651 F.3d at 63 (quoting *Bowie*, 232 F.3d at 929).

■ The Oklahoma City Bombing case illustrates admission of intrinsic or res gestae evidence and application of these evidentiary rules. On April 19, 1995, "a massive explosion tore apart the Murrah Building in Oklahoma City, Oklahoma, kill-

ing a total of 168 people and injuring hundreds more." *United States v. McVeigh*, 153 F.3d 1166, 1176 (10th Cir. 1998).[4] Various witnesses testified, over a continuing objection, about their presence at the scene of the blast and the immediate effects of the explosion. *Id.* at 1202–03. The court described some of the admitted evidence from nine named witnesses as follows:

> Norfleet's loss of his eye, fractured skull, and near-death experience, and his description of following a trail of blood out of the building; Hunt's post-continuing objection account of assisting a survivor who had lost an eye but who had not yet realized it and helping hold parents back as rescue workers brought out dead children from the day care center; Garrett's frantic search to find her son and her description of the dead children lined up on the street covered with glass combined with her pleas to "please don't lay our babies on this glass" because she did not realize that the babies were "already dead"; Weaver's search for her husband and her intuitions that he was dead; John Avera's rescue efforts, ... ; Luke Franey's remembrance of "running down the stairwell holding on the handrail and it being covered in blood"; Martin's substantial injuries and hearing wailing sounds from two female co-workers; Priscilla Salyers' panic while trapped under the rubble for four and a half hours; and Shannon's account of the rescue effort.

*Id.* at 1202. The McVeigh indictment listed the names of the dead; however, the nine witnesses were not listed in the indictment.[5] The Tenth Circuit concluded this evidence was admissible on the merits to show

> that the bomb was a weapon of mass destruction used against persons and property, that the explosion substantially interfered with interstate commerce, which could be established by showing disruption of government operations, that the bomb foreseeably would result in death, and that use of the bomb evidenced a malicious intent to kill. The bulk of the contested testimony showed either the magnitude of the destruction or identified the victims and the cause of death.

*Id.* at 1202–03 (footnote omitted). "Because this evidence was legitimately part of the res gestae of the crime, there was no error in its admission." *Id.* at 1203.

Here, the foreign-national civilians were allegedly endangered contemporaneously with the Sailors who died or were injured in the blast that damaged the USS COLE. *See, e.g.*, Appellant's Br. at 19–21. Endangerment to foreign-national civilians is admissible as intrinsic evidence of Specification 1 of Charge IV. The foreign-national civilians' observations of the magnitude of the blast, and descriptions of victims' injuries, the proximity of potential victims to the blast, business activity of the port of Aden, damage to the USS COLE, damage to nearby boats, and damage to buildings are relevant and admissible under Mil. Comm. R. Evid. 401 and 402 to show that Al–Nashiri engaged in an act that evinced a wanton disregard for human life. *See* 10 U.S.C. 950t(24); *McGill*, 815 F.3d at 879; *McVeigh*, 153 F.3d at 1202–03.

---

**4.** *Abrogated in part on other grounds by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999) (disapproving explicitly language in *McVeigh* concerning jury instructions), *aff'd in part, rev'd in part sub nom. Hooks v. Workman*, 689 F.3d 1148 (10th Cir. 2012).

**5.** Douglas O. Linder, *Famous Trials*, University of Missouri–Kansas City (UMKC) School of Law, "Grand Jury Indictment of Timothy McVeigh and Terry Nichols," http://law2.umkc.edu/faculty/projects/ftrials/mcveigh/mcveighindictment.html.

### Admissibility during the Presentence Phase

As with other evidence admitted on the merits, evidence of endangerment to foreign-national civilians admitted on the merits is also admissible during the presentence phase of the trial. *See Akbar*, 74 M.J. at 387 n.13 (citations omitted). Discussion of admissibility of evidence to support aggravating factor number one is warranted to clarify confusion at the trial level.

Appellant complied with R.M.C. 307(d),[6] which requires the trial counsel to provide the aggravating factors to the convening authority. Appellant's Br. at 12 n.21. On September 13, 2011, and November 5, 2013, Appellant provided notice of intent to seek the death penalty, and included five enumerated aggravating factors under R.M.C. 1004(c) and eight additional aggravating factors under R.M.C. 1001(b)(2).

**6.** Rule for Military Commissions (R.M.C.) 307(d) (*"Capital offenses*. If the offenses charged are offenses for which the maximum possible punishment is death, the trial counsel will make a recommendation as to whether the convening authority should refer the case to a capital military commission. The trial counsel will include in the transmittal letter which aggravating factor(s) the prosecution intends to prove or rely on to pursue a death sentence pursuant to R.M.C. 1004(b)(1) and. (c)."*).

**7.** In AE 247K, the military judge addressed a defense motion to strike a government notice of bill of particulars (application of aggravating factor # 1 to Charge II). The military judge ruled as follows:

The content of the Bill of Particulars ignores the Commission's ruling in AE 247J where it ruled: " 'persons other than the victim' for consideration under Aggravator # 1 as to Charge II includes the following individuals: All crewmembers on board the USS COLE (DDG 67), not otherwise referred to in Charge II as being deceased, but including those listed as injured in

Appellant's Br. at 12 (citing AE 182 at 1–2).

Appellee urged the military judge to strike these aggravating factors in a series of motions. *See, e.g.*, AE 246–50, 254–59; *see also* Appellee's Br. at 4–5; Appellant's Br. at 12–13. Appellee also urged the military judge to strike the evidence in a government bill of particulars for Specification 1 of Charge IV relating to endangerment to foreign-national civilians. AE 248D; *see also* Appellee's Br. at 2; Appellant's Br. at 17. In regard to admissibility of evidence of endangerment to foreign-national civilians, on February 3, 2015, the military judge ruled:

As in the AE 246 and AE 247 series,[7] the Commission cannot factually distinguish between the U.S. Navy crewmembers and any foreign nationals on board the USS COLE (DDG 67) at the time of the attack, thus it will allow the Prosecution to present evidence in aggravation

Charge I and those foreign nationals on board the USS COLE (DDG 67) at the time of the alleged attack." (AE 247J at 2). This was because the Commission could not factually distinguish between crewmembers and foreign nationals on board at the time of the attack. It is clear from the reasoning of the Commission and the express exclusion of foreign nationals not on board the USS COLE (DDG 67) that any individual not on board the USS COLE (DDG 67), foreign nationals located on the boats servicing USS COLE (DDG 67), individuals located on or around the refueling dolphin and any individuals on wharfs or docks are not included in the definition of "persons other than the victim" for consideration under Aggravating Factor # 1 as to Charge II.
AE 247K at 2–3; *see also* AE 246K at 2–3 (stating substantially the same for Charge I (Perfidy)). The military judge refers back to AEs 246J and 247J for the "reasoning of the Commission"; however, those exhibits do not contain any further rationale or explanation for excluding relevant presentencing evidence.

as to those individuals during a sentencing proceeding, if such a proceeding is required. However, it is clear from the reasoning of the Commission in the AE 246 and AE 247 series that foreign nationals not on board the USS COLE (DDG 67) but located on the boats servicing USS COLE (DDG 67), individuals located on or around the refueling dolphin and any individuals on wharfs or docks in the area are not included in the definition of "[one or more] persons other than the victim [that] was unlawfully and substantially endangered" for consideration under Aggravating Factor # 1 as to Charge IV.

AE 248G at 2–3 (alteration in original). The only basis we can discern for the military judge's findings and rulings for excluding evidence of endangerment to foreign-national civilians during the presentencing phase of the trial is the possibility of overlap between Specification 1 of Charge IV and Aggravating Factor No. 1.

## Overlap between Specification 1 of Charge IV and Aggravating Factor No. 1

■■■ Appellant incorporated aggravating factor number one verbatim from R.M.C. 1004(c)(1), which specifies "That the offense was committed in such a way or under circumstances that *the life of one or more persons other than the victim was unlawfully and substantially endangered*." Appellant's Br. at 12 (emphasis added) (citing AE 182; quoting R.M.C. 1004(c)(1), 2012 M.M.C.); *see also* AE 248G at 1 n.1; *Loving v. United States*, 517 U.S. 748, 773–74, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) (rejecting a challenge to

the promulgation by Executive Order of the aggravating factors in R.C.M. 1004).

A similar aggravating factor for homicide is provided in 18 U.S.C. § 3592(c)(5), which provides, "Grave risk of death to additional persons. The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, *knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense*[.]" *See United States v. Umaña*, 750 F.3d 320, 333, 356–58 (4th Cir. 2014) (emphasis added) (affirming constitutionality of statutory and non-statutory aggravating factors in death penalty case).

In a Sixth Circuit case involving a death sentence, Lawrence, the accused, shot and killed police officer Hurst during the commission of an attempted armed bank robbery and knowingly created a grave risk of death to one or more persons in the bank in addition to Hurst. *See United States v. Lawrence*, 735 F.3d 385, 410, 415 (6th Cir. 2013). Lawrence moved "to strike the grave-risk-of-death aggravating factor both prior to trial and at the close of the government's proofs in the eligibility phase. He maintained that the factor duplicated the 'put in jeopardy the life of employees' element of Count Seven and, by incorporation, Count Eight, . . . ." *Id.* at 417.[8]

The Sixth Circuit concluded that the duplication claim was factually incorrect because "The jury's finding that Lawrence put someone's life in jeopardy in violation of § 2113(d) did not make him eligible for the death penalty, so the fact that the § 3592(c)(5) grave-risk-of-death aggrava-

---

8. "Count Seven alleged that Lawrence put in jeopardy the lives of bank employees by means and use of a dangerous weapon (18 U.S.C. § 2113(d)), and killed Hurst in attempting to commit a bank robbery or avoid apprehension (§ 2113(e)). *United States v.*

*Lawrence,* 735 F.3d 385, 417–18 (6th Cir. 2013). "Count Eight alleged that Lawrence murdered Hurst with malice aforethought in the attempt to perpetrate a robbery (18 U.S.C. § 924(j)(1)). Count Eight expressly incorporated Count Seven." *Id.* at 418.

ting factor may have overlapped with § 2113(d) under the facts of this case is of no consequence." *Id.* at 418.

The Supreme Court also considered a case that is instructive. In *Lowenfield v. Phelps,* the defendant was convicted of murder (three counts), and found eligible for the death penalty because he had the "specific intent to kill or to inflict great bodily harm upon more than one person." 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). "The sole aggravating circumstance ... was that 'the offender knowingly created a risk of death or great bodily harm to more than one person.' " *Id.* at 243, 108 S.Ct. 546 (citation omitted) (*cited in Lawrence,* 735 F.3d at 417). The Supreme Court stated, "the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm" because the state's sentencing scheme "narrow[ed] the class of death-eligible murderers" and mitigation and the exercise of discretion was allowed at sentencing. *Id.* at 246, 108 S.Ct. 546 (*cited in Lawrence,* 735 F.3d at 417). As phrased in *Lawrence,* "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)." 735 F.3d at 417 (quoting *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); citing *Lowenfield,* 484 U.S. at 244–46, 108 S.Ct. 546)).

In *United States v. Mayhew,* the district court judge described the difference between the aggravating factors of "knowingly creat[ing] a grave risk of death to 1 or more persons in addition to the victim of the offense" and the killings themselves as follows:

A sharp distinction has been drawn between "Grave Risk" and "Multiple Killings or Attempted Killings," which are both listed as aggravating factors in [the government's Notice of Intent to Seek the Death Penalty in this case]. These courts have found that "Grave Risk of Death to One of More Persons in Addition to the Victims of the Offense," refers to, e.g., "bystanders who were not shot, but were nearby and within the zone of danger created by [the] shooting," *United States v. Le,* 327 F.Supp.2d 601, 613 (E.D. Va. 2004), while "Multiple Killings or Attempted Killings" relates to actual victims of the offense, e.g., "the four gang members ... Le allegedly shot, two of whom were killed and two of whom were wounded." *Id.* at 613; *see also United States v. Bin Laden,* 126 F.Supp.2d 290, 300 [ (2001) ] (holding "[the grave risk aggravator] relates to Defendants' mental state with respect to persons who were not the intended victims of the bombings," but the multiple killings/attempted killings aggravator "focuses on Defendants' particular desire that there be multiple victims, rather than just one—i.e., the sheer magnitude of the crime." *See also United States v. Barnette,* 211 F.3d 803, 819 (4th Cir. 2000) (upholding the district court's use of a jury instruction defining the meaning of grave risk of death as "a significant and considerable possibility" of placing other persons in a "zone of danger") [, *vacated,* 546 U.S. 803, 126 S.Ct. 92, 163 L.Ed.2d 32 (2005), *aff'd* 644 F.3d 192 (4th Cir. 2011) ]; *United States v. McVeigh,* 944 F.Supp. 1478, 1488 (D. Colo. 1996) (noting that the "Grave Risk" aggravating factor, when viewed in the context of [the] bombing of the Murrah Building in Oklahoma City, applied to those who were not injured, but could have been).

380 F.Supp.2d 936, 948 & n.15 (S.D. Ohio 2005) (first and last brackets added).

Pennsylvania Consolidated Statutes § 9711(d)(7) is similar to R.M.C. 1004(c)(1) and thus also is useful in our analysis. The

Pennsylvania "grave risk" aggravating factor provides, "In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. § 9711(d)(7). In *Pennsylvania v. Roney*, the court applied § 9711(d)(7), stating, "The grave risk of death aggravator applies to situations where the appellant in the course of killing his particular victim acts in a manner which endangers the lives of others close in proximity to the intended or actual victim." 622 Pa. 1, 79 A.3d 595, 636–37 (2013) (citations omitted). The record must include sufficient evidence that the defendant's actions in killing the victim establish "a nexus connect[ing] other persons in close proximity to the intended or actual victim to the zone of danger." *Id.* (citations omitted). This nexus exists, for example, "where there is potential for an errant, ricochet, or pass-through bullet; the endangered bystander need not be in the direct line of fire to be in grave risk of death." *Id.* (citations omitted). In *Roney*, the Supreme Court of Pennsylvania, affirmed the jury's finding of the grave risk aggravator where Roney shot and killed a police officer, and the bank manager was lying nearby on the floor of the bank. *Id.* at 638. The *Roney* Court listed a variety of circumstances involving application of the "grave risk aggravating factor" and then quoted and affirmed the trial judge's presentence instruction. *Id.* at 637–38.

Furthermore, the fact that a victim is alleged in one specification does not bar that victim from satisfying the "grave risk of death to another person" aggravator during the presentence phase of the trial. In another Pennsylvania case that went to the Third Circuit for review, Robinson was convicted of first degree murder of Bass and attempted criminal homicide of Hodge. *Robinson v. Beard*, 762 F.3d 316, 320 (3d Cir. 2014). Robinson shot Hodge in the head while she was in her apartment; however, she survived. *Id.* Shortly thereafter, Robinson shot and killed Bass, who was in the bathroom of Hodges' apartment. *Id.* These facts and circumstances were sufficient "to support the jury's finding of the 'grave risk' aggravating circumstance" under Pennsylvania law because "Hodge certainly could have been struck by a ricochet or pass-through bullet. The fact that she did not actually get shot again does not lessen the risk that she faced at the time." *Id.* at 331.

Here, the record does not provide a persuasive basis for exclusion of evidence of endangerment to foreign-national civilians on the merits or during presentencing. *See Mayhew*, 380 F.Supp.2d at 947 (denying motion to strike aggravating factor as duplicative with count one of the indictment).

**Conclusion**

We hold that the military judge erroneously excluded evidence of endangerment to foreign-national civilians not on board the USS COLE but located in the vicinity of the blast that damaged the USS COLE during the merits and presentence phases of the trial. The military judge's decision to exclude evidence of endangerment to of foreign-national civilians not on board the USS COLE but located in the vicinity of the blast that damaged the USS COLE during the merits and presentence phases of the trial is reversed, and the case is remanded to the military judge for proceedings consistent with this decision.